IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 4:16-CR-0006-1 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| RAHEEM JAMAR RULEY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
April 15, 2016

## I. INTRODUCTION

On January 14, 2016, Defendant Raheem Ruley (hereinafter "Mr. Ruley")

and Co-Defendant Antoine Paris Davis (hereinafter "Mr. Davis") were charged

with conspiracy to distribute cocaine and 100 grams or more of heroin, in violation

of 21 U.S.C. § 846 and with one count of possession with intent to distribute 100

grams or more of heroin and cocaine, in violation of 21 U.S.C. § 846(a)(1). Mr.

Ruley was also charged with three counts of distribution of cocaine.

On March 1, 2016, Mr. Ruley, through his counsel, filed a motion to sever

and a motion to suppress evidence discovered after the execution of a search

warrant obtained on June 15, 2015.  In accordance with the following analysis, Mr.

Ruley's motions are both denied.

## II. BACKGROUND

On three separate occasions between June 3 and June 16, 2015, Pennsylvania State Police troopers conducted controlled purchases of cocaine from Mr. Ruley. On June 3, 2015, undercover trooper Ryan Kelly (hereinafter "Trooper Kelly") received information from a confidential informant that the informant could buy two "8-balls" or eighth-ounce quantities of cocaine for $400 from a suspect known as "Ant." The informant provided text messages to and from Ant regarding the cocaine purchase and sent a text to Ant's phone requesting an 8-ball. Mr. Ruley answered, directing the informant to meet him at Weis Market at the intersection of River Avenue and Washington Boulevard in Williamsport, Pennsylvania. Mr. Ruley then directed the informant to meet him near the Pizza Hut on 3rd Street in Williamsport instead. Trooper Kelly and the informant proceeded to the Pizza Hut where Mr. Ruley entered the back seat of the vehicle and exchanged $400 of prerecorded funds for the cocaine. Approximately five minutes later, surveillance officers observed Mr. Ruley seated on the steps of 321 Tinsman Avenue, Williamsport, Pennsylvania.

Similarly on June 10, 2015, Trooper Kelly contacted the cell phone used by Mr. Ruley and arranged another controlled drug buy. Trooper Kelly picked up Mr. Ruley near Tinsman and Homewood Avenues in Williamsport and was then directed to drive to another location where Mr. Ruley again received $400 in

exchange for a bag of cocaine. Prior to the transaction, surveillance officers observed Mr. Ruley descend the porch steps of 321 Tinsman Avenue and walking in the direction of the meeting location. Immediately following the transaction, Mr. Ruley was seen re-entering 321 Tinsman Avenue.

Two days later, on June 12, 2015, Mr. Ruley texted Trooper Kelly to arrange a sale of an ounce of cocaine for $1,200. After the exchange took place, Trooper Kelly prepared an anticipatory search warrant for 321 Tinsman Avenue. The search warrant was contingent on Mr. Ruley exiting 321 Tinsman Avenue immediately prior to the controlled drug sale and delivering cocaine to Trooper Kelly. The magistrate judge issued the search warrant on June 15, 2015.

On June 16, 2015, Mr. Ruley and Trooper Kelly arranged a sale and agreed for Trooper Kelly to pick up Mr. Ruley on Homewood Avenue. Immediately prior to the sale, surveillance officers observed Mr. Ruley exit the front door of 321 Tinsman Avenue and walk in the direction of the meeting location. He was picked up by Trooper Kelly and exchanged seven 8-balls of cocaine for $900. As Mr. Ruley exited the vehicle, Trooper Kelly gave a pre-arranged signal to the other officers to arrest Mr. Ruley. As they approached, however, Mr. Ruley began running and led investigators on a foot chase until he was arrested in the parking lot of TJ Maxx Plaza on 3rd Street in Williamsport. Mr. Ruley's jacket, hat, and

currency were recovered along the path of Mr. Ruley's flight. Mr. Ruley's cell phone was not recovered.

After Mr. Ruley was arrested, investigators executed the anticipatory search warrant at 321 Tinsman Avenue. The search of the residence yielded two safes containing evidence of drug trafficking. One safe contained four ounces of heroin, sixteen bags of cocaine, bags containing approximately eleven grams of cocaine powder, packing materials, and a digital scale. The second contained $1,000 in currency, including the prerecorded funds used by Trooper Kelly to purchase cocaine from Mr. Ruley on June 10, 2015, six caliber rounds, and a small bag of cocaine.

In a kitchen drawer, investigators recovered Mr. Ruley's wallet, which contained his Pennsylvania identification card and $380 in cash. Also in the drawer, investigators recovered plastic bags containing crack cocaine and vials of marijuana. In a bedroom, investigators found identification connecting Co-defendant Antoine Davis to the 321 Tinsman Avenue residence and Lycoming County court documents bearing Mr. Davis' name. The owner of the property also reported that Mr. Davis resided at the residence and paid the rent. A key to the residence was found on Mr. Davis' person at the time of the search. Witnesses reported that Mr. Ruley occupied one of the bedrooms in the residence. In that bedroom, investigators found two digital scales, 9mm and .38 rounds, and records

in the name of a person identified by the property owner as a former occupant in the home.

Investigators also recovered several cell phones at the residence. One of the cell phones contained a number for "Scrizz," which matched the number used by Trooper Kelly to arrange the three controlled drug purchases. Multiple text message exchanges with the number contacted by Trooper Kelly during the same time period as the controlled drug purchases were also discovered on the cell phone. The cell phone also contained text messages concerning drug trafficking activities with other individuals.

## III. DISCUSSION

### A. Motion to Sever

In his motion to sever, Mr. Ruley argues that the continued joinder of his case with the case of Co-Defendant Antoine Paris Davis is prejudicial to him. He contends that no true nexus exists between him and the 321 Tinsman Avenue residence because none of the evidence, other than the wallet recovered in the kitchen drawer, links him to 321 Tinsman Avenue. The government opposes the motion and argues that Mr. Ruley and Mr. Davis are indeed properly joined under Fed. R. Crim. P. 8. It further contends that Mr. Ruley will suffer no prejudice because a joint trial will not impair his right to confront and cross-examine witnesses.

Federal Rule of Criminal Procedure 8 provides that two or more defendants may be charged under one indictment "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."[1] Joint trials are generally favored in that they "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."[2] A transactional nexus must exist, however, before joinder of defendants in a multiple-defendant trial is proper.[3] Whether defendants are properly joined under Rule 8 depends on "the indictment, not upon the proof that was subsequently produced at trial."[4]

In the matter at hand, the indictment contains five counts: Count I: conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, Counts II through IV: distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and Count V: possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[5] Mr. Ruley is charged in all five counts. Mr. Davis is charged in Count I and Count V. The superseding indictment charged both Defendants with a unitary, integrated conspiracy to distribute cocaine and heroin. Specifically, it alleges that the Defendants, together, used 321 Tinsman Avenue to

---

[1] Fed. R. Crim. P. 8(b).
[2] *U.S. v. Jimenez*, 513 F.3d 62, 82 (3d Cir. 2008) (*citing United States v. Lane,* 474 U.S. 438, 449 (1986)).
[3] *Jimenez*, 513 F.3d at 82-83 (*citing United States v. Irizarry,* 341 F.3d 273, 287 n. 4 (3d Cir. 2003)).
[4] *Jimenez*, 513 F.3d at 82.
[5] ECF No. 1.

accomplish the objects of the conspiracy through a common manner and means. Accordingly, the Defendants' cases are properly joined under Rule 8.

Typically, defendants jointly indicted should be tried together to conserve judicial resources, especially where the same evidence would be presented at both trials.[6] Rule 14 of the Federal Rules of Criminal Procedure, however, provides that a court may order separate trials when a proper joinder "appears to prejudice a defendant . . ."[7] In determining prejudice, "[t]he proper question on appeal is whether the jury could have been reasonably expected to compartmentalize the allegedly prejudicial evidence in light of the quantity and limited admissibility of the evidence."[8] "Neither a disparity in evidence, nor introducing evidence more damaging to one defendant than others entitles seemingly less culpable defendants to severance."[9]

Whether to sever is a determination within the sound discretion of the trial judge.[10]  In making the determination, the trial judge must consider what trial developments are foreseeable at the time the motion to sever is made.[11] Even if a judge is found to have abused his or her discretion in denying a motion to sever, a

---

[6] *U.S. v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991) (*citing U.S. v. Sandini,* 888 F.2d 300, 306 (3d Cir.1989), *cert. denied,* 494 U.S. 1089 (1990); *United States v. De Peri,* 778 F.2d 963, 984 (3d Cir.1985), *cert. denied,* 475 U.S. 1110 (1986)).
[7] Fed. R. Crim. P. 14(a).
[8] *Eufrasio*, 935 F.2d at 568 (*quoting U.S. v. De Peri,* 778 F.2d 963, 984 (3d Cir. 1985))
[9] *Eufrasio*, 935 F.2d at 568 (*citing United States v. Sebetich,* 776 F.2d 412, 427 (3d Cir.1985), *cert. denied,* 484 U.S. 1017 (1988)).
[10] *U.S. v. Reichter,* 647 F.2d 397, 400 (3d Cir. 1981)
[11] *See Eufrasio*, 935 F.2d at 568.

conviction will not be overturned unless the appellant meets the "heavy burden" of demonstrating "clear and substantial prejudice resulting in a manifestly unfair trial."[12]

Mr. Ruley alleges that his Sixth Amendment right to confront and cross-examine witnesses will be violated if statements of Mr. Davis, who is a co-defendant and may choose not to testify, are used in trial against Mr. Ruley. He also argues that he should be entitled to severance because the evidence against him is *de minimis* when compared to the evidence against Mr. Davis, risking prejudice to Mr. Ruley.

Mr. Ruley's arguments lack merit. First, in *Richardson v. Marsh*, the United States Supreme Court held that a defendant's rights under the confrontation clause are not violated when a co-defendant's out-of-court statements are admitted under a jury instruction not to use the statements in any way against the defendant and the statements are redacted to eliminate the defendant's connection to the case.[13] Mr. Ruley argues that Mr. Davis' statements cannot be adequately redacted but fails to explain which statements he refers to or why they could not be adequately redacted.

Similarly, Mr. Ruley's argument that the evidence against him is *de minimis* when compared with the evidence against Mr. Davis is also unconvincing. The

---

[12] *Eufrasio*, 935 F.2d at 568.
[13] 481 U.S. 200, 211 (1987).

amount of evidence against Mr. Ruley himself is significant. Mr. Ruley was seen exiting 321 Tinsman Avenue on several occasions immediately prior to and following the controlled drug purchases. Mr. Ruley's wallet containing his Pennsylvania identification card was found in the residence. Prerecorded funds from a controlled drug sale between Trooper Kelly and Mr. Ruley were found in the residence. Witnesses reported that Mr. Ruley had a room at the residence.

Additionally, the text messages exist between the cell phone found in the residence and "Scrizz," whose telephone number matched the number Trooper Kelly used to arrange controlled drug purchases with Mr. Ruley. Moreover, there exists abundant witness testimony Trooper Kelly and other witnesses who will likely testify for the prosecution at trial, all of whom are subject to cross-examination by Mr. Ruley. The evidence against Mr. Ruley is not *de minimis*.

The evidence links Mr. Ruley to 321 Tinsman Avenue and also seems to be interconnected and applicable to both Defendants. Accordingly, the Defendants must be tried together.

## B. Motion to Suppress

In his motion to suppress, Mr. Ruley challenges the legality of the anticipatory search warrant issued by the magistrate judge to search 321 Tinsman Avenue on the premise that the government lacked probably cause to search the home. Mr. Ruley further requests a *Franks* hearing and challenges the truthfulness

of the information in the affidavit of probable cause on which the search warrant relied.[14]

In reviewing a magistrate judge's issuance of a warrant, a court's only duty is to ensure that the magistrate judge had a "substantial basis" to determine that probable cause existed.[15] A magistrate judge's "determination of probable cause should be paid great deference by reviewing courts."[16]

To determine probable cause to issue a search warrant, a magistrate judge must determine whether, "given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."[17] In cases of conditioned anticipatory search warrants, like the one in the case at hand, two prerequisites must be met for a finding of probable cause: 1) there must be probable cause to believe that the triggering condition will occur, and 2) if the triggering condition occurs, "there is a fair probability that contraband or evidence of a crime will be found in a particular

---

[14] While the issue was not raised by either party, there remains a question of whether Mr. Ruley even has standing to challenge the search warrant. The United States Supreme Court has held that an individual "who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Mr. Ruley maintains that he has no connection with 321 Tinsman Avenue (other than the recovery of the wallet and prerecorded funds from the previous drug transaction at the residence). Mr. Davis was on the lease and was described by the landlord as the lessee. The government states that witnesses during the search reported that one of the rooms of the residence belonged to Mr. Ruley. Mr. Ruley, however, does not admit nor deny this information. As the motion to suppress is nevertheless denied, this Court will assume that Mr. Ruley has standing to challenge the legality of the search warrant for the purposes of this Memorandum.
[15] *See Jones v. U.S.*, 362 U.S. 257, 271 (1960).
[16] *Spinelli v. U.S.*, 393 U.S. 410, 419 (1969).
[17] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

place."[18] "The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination."[19]

The affidavit of probable cause provided the following information, in relevant part, to the magistrate judge: on June 3, 2015, police observed a male identified as "Ant" conduct a drug sale and immediately thereafter walk onto the porch of 321 Tinsman Avenue; on June 10, 2015, police observed the individual known as "Ant" exit 321 Tinsman Avenue, immediately thereafter conduct a drug sale, and then subsequently return to 321 Tinsman Avenue. The warrant was thus conditioned on the same individual, known at the time as "Ant" and later identified as Mr. Ruley, "exiting the residence at 321 Tinsman Avenue and then delivering a quantity of cocaine to [Trooper Kelly]."[20]

The affidavit provided sufficient information for the magistrate judge to conclude that "Ant" would exit the residence, as he had on previous occasions prior to and following controlled drug buys. The affidavit also provided sufficient information for the magistrate to conclude that there was a fair probability that drugs would be found at 321 Tinsman Avenue.

Mr. Ruley argues that there is no nexus between him, the contraband, and the place to be searched. He states that there was no connection between the cocaine transferred to Trooper Kelly and the cocaine and other drugs found during

---

[18] *U.S. v. Grubbs*, 547 U.S. 90, 96-97 (2006) (*citing Gates*, 462 U.S. at 238).
[19] *Grubbs*, 547 U.S. at 97.
[20] ECF No. 39-5.

the search of 321 Tinsman Avenue. He further contends that the affidavit overstated Mr. Ruley's connection to the residence because the individual seen entering and exiting the residence, described as 5 feet 10 inches and 150-165 pounds, does not match the description of Mr. Ruley.[21] These arguments, however, are better suited for trial. The affidavit was prepared by Trooper Kelly, the same individual who had, on three separate occasions, purchased cocaine from Mr. Ruley. At the time the affidavit was written, Mr. Ruley was identified by the alias "Ant." The affidavit provided sufficient probable cause to establish that drugs would be found at 321 Tinsman Avenue immediately after Mr. Ruley, who had sold drugs to Trooper Kelly on these three separate occasions, exited the residence to sell drugs.

Lastly, Mr. Ruley requests a *Franks* hearing, pursuant to *Franks v. Delaware*,[22] because he challenges the truthfulness of the affidavit of probable cause relied on by the magistrate judge in signing the search warrant. Specifically, he argues that Trooper Kelly's statement in the affidavit of probable cause that Trooper William Holmes observed "Ant" re-entering 321 Tinsman Avenue after the controlled drug sale on June 10, 2015 was not supported by Trooper Holmes' report.

---

[21] Mr. Ruley also argues that the triggering condition was not met because the warrant was conditioned on "Ant" leaving 321 Tinsman Avenue, completing the controlled buy, and returning to 321 Tinsman Avenue. The affidavit, however, clearly states that the warrant was conditioned on the individual leaving Tinsman Avenue and delivering a quantity of cocaine to Trooper Kelly. *See* ECF No. 39-5 at 2.

[22] 438 U.S. 154, 155-56 (1978).

In *Franks v. Delaware*, the United States Supreme Court held that

> where the defendant makes a substantial preliminary showing that a
> false statement knowingly and intentionally, or with reckless
> disregard for the truth, was included by the affiant in the warrant
> affidavit, and if the allegedly false statement is necessary to the
> finding of probable cause, the Fourth Amendment requires that a
> hearing be held at the defendant's request.[23]

At a *Franks* hearing, a defendant must prove, by a preponderance of the evidence,

(1) that there was a false statement or omission in the affidavit and that it was

made knowingly and deliberately, or with a reckless disregard for the truth, and (2)

that the false statement or omission was material to the probable cause

determination.[24]

The affidavit of probable cause does state, as Mr. Ruley contends, that "Ant"

was observed "re-entering 321 Tinsman Avenue by Tpr. William HOLMES" at

1239 hours on June 10, 2015.[25] The government, however, argues that the

statement was merely an inadvertent error concerning which troopers observed

"Ant" returning to the residence after the controlled drug sale. The government

further submits the reports of Troopers Wool and Eisenhower, both of which state

that the officers observed "Ant" return to the residence after the drug sale.

This Court is persuaded that Trooper Kelly's statement that Trooper Holmes

observed the suspect return to the residence was an inadvertent misstatement and

---

[23] 438 U.S. 154, 155-56 (1978).
[24] *U.S. v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).
[25] ECF No. 39-5.

not a false statement made knowingly and deliberately or with a reckless disregard for the truth. All three troopers' reports state the following information on which Trooper Kelly relied in composing the affidavit of probable cause: 1) Trooper Holmes observed "the target" leave 321 Tinsman Avenue but was unable to capture a digital image due to traffic; 2) Trooper Eisenhower observed a "B/N-male subject" exit the residence at 1208 wearing a gray vest over a black shirt and grey shorts; 3) Trooper Wool observed a black male exit the residence at 1219 hours; and 4) Troopers Eisenhower and Wool both observed the same individual they saw exit the residence re-enter the residence at 1239 hours. Three officers saw Mr. Ruley exit the residence sometime between 12:09 and 12:19 p.m. and two officers observed Mr. Ruley re-enter the residence at 12:39 p.m.

Read in their totality, the reports suggest that Trooper Kelly simply wrote the wrong trooper's name as the trooper who observed Mr. Ruley return to the home.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Mr. Ruley's motion to sever and motion to suppress are both denied.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

14